1   GARRY G. MATHIASON, Bar No. 051119
    ANDREW M. SPURCHISE, Bar No. 245998
2   JESSICA X. ROTHENBERG, Bar No. 284823
    LITTLER MENDELSON, P.C.
3   650 California Street
    20th Floor
4   San Francisco, California  94108.2693
    Telephone:    415.433.1940
5   Facsimile:    415.399.8490

6   SUSAN K. HOFFMAN, Bar No. 19498
    LITTLER MENDELSON, P.C.
7   Three Parkway
    1601 Cherry Street, Suite 1400
8   Philadelphia, PA  19102.1321
    Telephone:    267.402.3000
9   Facsimile:    267.402.3131

10  Attorneys for Defendants
    ALLIANZ ASSET MANAGEMENT OF
11  AMERICA L.P., ALLIANZ ASSET
    MANAGEMENT OF AMERICA LLC and
12  ALLIANZ GLOBAL INVESTORS U.S. LLC.

13                      UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16  SEUNG MINN,                              Case No. 3:14-cv-02220-JCS
17                  Plaintiff,
18         v.                                **DEFENDANTS' NOTICE OF MOTION
                                             AND MOTION TO DISMISS, OR IN THE
19  ALLIANZ ASSET MANAGEMENT OF              ALTERNATIVE, TO COMPEL
    AMERICA L.P., a Delaware limited         ARBITRATION AND FOR A STAY;
20  partnership, ALLIANZ ASSET               MEMORANDUM OF POINTS AND
    MANAGEMENT OF AMERICA LLC, a             AUTHORITIES IN SUPPORT THEREOF**
21  Delaware limited liability company,
    ALLIANZ GLOBAL INVESTORS U.S.            **[FED. R. CIV. PRO. 12(b)(1) &12(b)(6)]**
22  LLC, a Delaware limited liability company,
    and DOES 1-25,                           Date: July 11, 2014
23                                           Time: 9:30 a.m.
                    Defendants.              Courtroom: G
24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL                                Case No. 3:14-cv-02220-JCS
ARBITRATION

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION..................................................................................................3

II.   FACTS .............................................................................................................4

    A.    Plaintiff's Employment And The Plans ................................................4

        1.    The DIF Plan ..............................................................................4

            a.    The DIF's Administrative Procedures ..............................5

        2.    The LTIPA Plan...........................................................................5

            a.    The LTIPA's Administrative Procedures ..........................6

    B.    Plaintiff's Employment Termination And Lawsuit...............................6

III.  ALLIANZ IS ENTITLED TO DISMISSAL OF PLAINTIFF'S COMPLAINT ...................7

    A.    Where, As Here, The Complaint Lacks Sufficient Facts To Constitute A
        Cognizable Legal Theory, Dismissal Is Appropriate ................................7

    B.    The DIF and LTIPA Plans Are Employee Benefit Plans Governed By ERISA.........8

        1.    The DIF And LTIPA Plans Are Top Hat Employee Benefit Plans
            Governed By ERISA ................................................................. 10

            a.    The Plans Are Unfunded ............................................... 10

            b.    The Plans Provide Deferred Compensation For A Select Group
               Of Employees .............................................................. 10

    C.    Plaintiff's First And Second Causes Of Action Should Be Dismissed For
        Failure To Exhaust Administrative Remedies As Required By ERISA ................... 12

    D.    In The Alternative, Plaintiff's Claim For Breach Of The LTIPA Plan Should
        Be Compelled To Arbitration And The Claim For Breach Of The DIF Plan
        Stayed........................................................................................... 14

        1.    The LTIPA Is Governed By The Federal Arbitration Act........................... 14

        2.    Plaintiff's Claim For Breach of Contract (DIF) Should Be Stayed.............. 17

    E.    Plaintiff's State Law And Tort Claims Should Be Dismissed Because They
        Are Preempted By ERISA ................................................................. 17

IV.   CONCLUSION.................................................................................................. 19

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION

i.

Case No. 3:14-cv-02220-JCS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995) ...................................................................................................... 14

*Amato v. Bernard*,
   618 F.2d 559 (9th Cir. 1980) ....................................................................................... 13

*Armendariz v. Found. Health Psychcare Serv., Inc.*,
   24 Cal. 4th 83 (2000) ................................................................................................... 15

*AT&T Mobility, LLC v. Concepcion*,
   131 S. Ct. 1740 ..................................................................................................... 14, 15

*Balistreri v. Pacifica Police Dep't*,
   901 F. 2d 696 (9th Cir. 1988) ........................................................................................ 7

*Bast v. Prudential Ins. Co. of Am.*,
   150 F.3d 1003 (9th Cir. 1998) ............................................................................... 12, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 7

*Branch v. Tunnell*,
   14 F. 3d 449 (9th Cir 1994) ........................................................................................... 7

*Carr v. First Nationwide Bank*,
   816 F. Supp. 1476 (N.D. Cal. 1993) ...................................................................... 10, 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ..................................................................................... 15

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ..................................................................................................... 15

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ....................................................................................................... 14

*Cox v. Ocean View Hotel Corp.*,
   533 F.3d 1114 (9th Cir. 2008) ..................................................................................... 15

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ..................................................................................................... 15

*Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust*,
   50 F.3d 1478 (9th Cir. 1995) .......................................................................... 1, 12, 13

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION

ii.

Case No. 3:14-cv-02220-JCS

*District of Columbia v. Greater Washington*
506 U.S. 125, 129-30 (1992) ...................................................................................18

*Duggan v. Hobbs,*
1995 U.S. Dist. LEXIS 4569 (N.D. Cal. Mar. 30, 1995) ...............................10, 11

*Emmenegger v. Bull Moose Tube Co.,*
197 F.3d 929 (8th Cir. 1999) ................................................................................. 9

*FMC Corp. v. Holliday,*
498 U.S. 52 (1990) ................................................................................................13

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991) ..........................................................................................14, 15

*Greany v. Western Farm Bureau Life Ins. Co.,*
973 F.2d 812 (9th Cir. 1992) ................................................................................18

*Green Tree Fin. Corp.-Ala. v. Randolph,*
531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) ......................................16

*Grigg v. Griffith Co.,*
2014 U.S. Dist. LEXIS 3336 (E.D. Cal., Jan. 9, 2014) .......................................12

*Joanou v. Coca-Cola Co.,*
26 F.3d 96 (9th Cir. 1994) ...................................................................................18

*Kinkead v. Southwestern Bell Corp. Sickness and Accident Disability Benefit Plan,*
111 F.3d 67 (8th Cir. 1997) ...............................................................................12

*Lee v. City of Los Angeles,*
250 F. 3d 668 (9th Cir. 2001) ............................................................................... 7

*Leeson v. Transamerica Disability Income Plan,*
671 F.3d 969 (9th Cir. 2012) ................................................................................ 7

*Medina v. Anthem Life Ins. Co.,*
983 F.2d 29 (5th Cir. 1993) .................................................................................12

*Modzelewski v. RTC,*
14 F.3d 1374 (9th Cir. 1994) ................................................................................ 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983)...........................................................................................15, 16

*Murphy v. DirecTV, Inc.,*
724 F.3d 1218 (9th Cir. 2013) .............................................................................16

*Neitzke v. Williams,*
490 U.S. 319 (1989) .............................................................................................. 7

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION

iii.

Case No. 3:14-cv-02220-JCS

*Nevill v. Shell Oil Co.*,
   835 F.2d 209 (9th Cir. 1987) ........................................................................ 12, 18

*NS Holdings LLC Inc. v. Am. Int'l Group, Inc.*,
   2010 U.S. Dist. LEXIS 125077 (C.D. Cal. 2010) ............................................. 17

*Oatway v. American International Group, Inc.*,
   325 F.3d 184 (3d Cir. 2003) ............................................................................... 9

*Perry v. Thomas*,
   482 U.S. 483 (1987) .......................................................................................... 15

*Powell v. AT&T Communications, Inc.*,
   938 F.2d 823 (7th Cir. 1991) ............................................................................ 13

*Rinaldi v. CCX Inc.*,
   2008 U.S. Dist. LEXIS 77394, at *3-4 (W.D.N.C.) .......................................... 18

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F. 2d 530 (9th Cir. 1984) ............................................................................. 7

*Roderick v. Mazzetti & Assocs.*,
   2004 U.S. Dist. LEXIS 22911 (N.D. Cal. 2004) ............................................... 17

*Shearson/Am. Exp., Inc. v. McMahon*,
   482 U.S. 220 (1987) .......................................................................................... 15

*Silvas v. E*Trade Mortg. Corp.*,
   421 F. Supp. 2d 1315 (S.D. Cal. 2006) ............................................................... 7

*Smith v. Southwestern Bell Telephone Company*,
   2003 U.S. Dist LEXIS 511 (N.D. Cal. 2003) .................................................... 18

*Spitz v. Berlin Indus., Inc.*,
   1994 US Dist. LEXIS 1576 (N.D. Ill. 1994) ....................................................... 8

*Sprewell v. Golden State Warriors*,
   266 F. 3d 979 (9th Cir. 2001) ............................................................................. 7

*Swift v. Zynga Game Network, Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) .............................................................. 17

*Tingey v. Pixley-Richards West, Inc.*,
   953 F.2d 1124 (9th Cir. 1992) .......................................................................... 18

*United States for the Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*,
   750 F.2d 1422 (9th Cir. 1985) .......................................................................... 17

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION

iv.

Case No. 3:14-cv-02220-JCS

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) ................................................................................16

*Wagner v. Stratton Oakmont, Inc.*,
   83 F.3d 1046 (9th Cir. 1996) ....................................................................16

*Winterrowd v. American General Annuity Insurance Co.*,
   2003 U.S. App. LEXIS 3893 (9th Cir. 2003) .........................................17

STATUTES

29 U.S.C. § 1001 *et seq.* ERISA ..........................................................passim

29 U.S.C. § 1002(2)(A)(ii) .................................................................8, 10

29 U.S.C. § 1101(a)(1) .............................................................................10

29 U.S.C. § 1132(a)(1)(B) .......................................................................12

29 U.S.C. § 1144(a) ..............................................................................1, 2

Cal. Code. Civ. Proc. § 1281 ..................................................................15

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...............................1, 14, 15

OTHER AUTHORITIES

29 C.F.R. § 2510.3-2(c) .............................................................................9

Fed. Rule Civ. Proc. 12(b) ....................................................................1, 7

MOTION TO DISMISS / COMPEL
ARBITRATION

v.

Case No. 3:14-cv-02220-JCS

1    **TO PLAINTIFF SEUNG MINN AND HIS ATTORNEYS OF RECORD:**

2    PLEASE TAKE NOTICE that on July 11, 2014, in Courtroom G of the U.S. District Court,

3    Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, at 9:30 a.m., or

4    as soon thereafter as counsel may be heard, Defendants ALLIANZ ASSET MANAGEMENT OF

5    AMERICA L.P., ALLIANZ ASSET MANAGEMENT OF AMERICA LLC and ALLIANZ

6    GLOBAL INVESTORS U.S. LLC (collectively "Defendants" or "Allianz") will move and hereby

7    do move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an order

8    dismissing the Complaint of Plaintiff Seung Minn ("Plaintiff") on the following grounds:

9    (1) Plaintiff's First Cause of Action for Breach of Contract—LTIPA and Second Cause of

10   Action for Breach of Contract—DIF should be dismissed for lack of subject matter jurisdiction

11   and/or failure to state a claim upon which relief may be granted.  To the extent these claims are

12   brought as contract claims under California law, they are preempted by the Employee Retirement

13   Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  ERISA "supersede[s] any and all

14   State laws insofar as they may now or hereafter relate to any employee benefit plan[.]"  29 U.S.C. §

15   1144(a).

16   Moreover, even if the Court construes these claims as viable claims for benefits under

17   ERISA, these claims must still be dismissed on the grounds that Plaintiff failed to exhaust the

18   administrative remedies set forth in the Long Term Cash Bonus Plan ("LTIPA") and Deferral Into

19   Funds Plan ("DIF").  *See, e.g., Diaz v. United Agricultural Employee Welfare Benefit Plan and*

20   *Trust*, 50 F.3d 1478 (9th Cir. 1995) ("claimant must avail himself or herself of a plan's own internal

21   review procedures before bringing suit in federal court.").

22   If the Court finds that Plaintiff's First and Second Causes of Action should not be dismissed

23   based on Plaintiff's failure to exhaust administrative remedies, Defendants move in the alternative

24   for an order compelling arbitration of Plaintiff's claim under the LTIPA Plan pursuant to the Federal

25   Arbitration Act, 9 U.S.C. § 1 *et seq.* and staying Plaintiff's claim under the DIF Plan pending the

26   outcome of that arbitration.

27   (2) Plaintiff's Third Cause of Action for Failure to Pay Earned Wages, Fourth Cause of

28   Action for Waiting Time Penalties, and Fifth Cause of Action for Conversion should be dismissed

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION

Case No. 3:14-cv-02220-JCS

1  for failure to state a claim upon which relief may be granted on the grounds that these claims are

2  preempted by ERISA because ERISA "supersede[s] any and all State laws insofar as they may now

3  or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a).

4       The motion is based upon this Notice of Motion and Motion, the accompanying

5  Memorandum of Points and Authorities, as well as all other papers filed with the Court in this

6  matter, the Court's file and any oral argument heard.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS / COMPEL
ARBITRATION
2.
Case No. 3:14-cv-02220-JCS

## I.   INTRODUCTION

Plaintiff is a former Managing Director, Senior Portfolio Manager and Chief Investment Officer for defendant Allianz Global Investors U.S. LLC.  In October 2013, Plaintiff's employment was terminated based on a violation of company policies.  During his employment, a portion of Plaintiff's income was deferred pursuant to two separate benefit plans applicable to certain highly compensated employees: the Long Term Cash Bonus Plan ("LTIPA") and the Deferral Into Funds Plan ("DIF") (collectively, "the Plans").

Both Plans are applicable to a select group of highly compensated employees and defer a substantial amount of each participating employee's income to the date of the employee's employment termination or beyond.  Accordingly, both Plans are "top hat" plans governed by ERISA, and subject to ERISA's enforcement provisions.

The sole issue in this case is whether Plaintiff is entitled to the compensation under these Plans.  Each of these Plans also contains a clause whereby a covered employee forfeits benefits in the event he or she is terminated for cause.  Allianz's position is Plaintiff is not entitled to benefits under these Plans because he was terminated for cause as defined by the Plans, while Plaintiff contends he is entitled to these benefits because he was not terminated for cause.

When Allianz refused to pay out Plaintiff's deferred compensation, Plaintiff filed the instant lawsuit in San Francisco County Superior Court, alleging five causes of action: (1) Breach of Contract, based on the LTIPA; (2) Breach of Contract, based on the DIF; (3) Failure to Pay Earned Wages under the California Labor Code; (4) Waiting Time Penalties under the California Labor Code; and (5) Conversion.

Allianz is entitled to dismissal of each of these claims.  Plaintiff's First and Second Causes of Action for breach of contract essentially amount to claims for benefits under ERISA.  However, before pursuing these claims in federal court, Plaintiff has a contractual obligation to exhaust the administrative remedies outlined in the Plans, starting with submitting a claim to the Plan Administrator(s).  He has failed to do so.

If the Court does not dismiss Plaintiff's claims for benefits under the Plans for failure to exhaust, Plaintiff's claim for breach of contract under the LTIPA should be compelled to arbitration

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION                                     3.                     Case No. 3:14-cv-02220-JCS

because it is subject to a valid arbitration agreement.  While arbitration is pending, Plaintiff's claim for breach of contract under the DIF should be stayed because a determination as to whether Plaintiff was terminated "for cause" will have equal application to his right to benefits under the LTIPA and DIF Plans.

With respect to Plaintiff's Third, Fourth and Fifth Causes of Action, because Plaintiff's lawsuit is a claim for employee benefits under ERISA, his derivative California Labor Code and tort claims based on alleged violations of the Plans are preempted by ERISA and also must be dismissed.

Plaintiff cannot claim entitlement to benefits in accordance with the LTIPA and DIF Plans while at the same time disclaiming any obligation to pursue the remedies those Plans provide. Accordingly, Allianz's motion should be granted, and the Complaint dismissed.

## II.    FACTS

### A.    Plaintiff's Employment And The Plans

Plaintiff was a "high-ranking executive" employed as Managing Director, Senior Portfolio Manager and Chief Investment Officer of the Disciplined Equities Group for defendant Allianz Global Investors U.S. LLC.  (Compl. at ¶¶ 1, 2, 13.)  During his employment, Plaintiff participated in two deferred compensation plans, the LTIPA, and the DIF.  (Compl. at ¶ 2, Exhs. 1, 2.)

#### 1.    The DIF Plan

The DIF Plan is a "deferred compensation plan for selected Eligible Employees."  (Compl., Exh. 2, at Preamble.)   The DIF Plan calls for mandatory payment of distributions upon the occurrence of the first of four events: (1) the participating employee's separation from service (early retirement, retirement, termination without cause, and planned termination); (2) the date the participating employee becomes disabled; (3) the participating employee's date of death; or (4) the occurrence of an unforeseen emergency.  (*Id.* at Appendix 3, § 9.1.)  Consistent with the structure of typical Top Hat plans, the DIF Plan also allows the Participating Employer discretion to establish a deferral period that covers any period of time, and distributions are made upon the expiration of the period if not previously paid or forfeited.  (*Id.* at §§ 2; 9.1.)

If a participating employee is terminated for cause, he or she forfeits any award under the Plan.  (*Id.* at § 8.1.)  If a participating employee is terminated before distribution of the award due to

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL ARBITRATION                    4.                    Case No. 3:14-cv-02220-JCS

early retirement, retirement, involuntary termination without cause, or a planned termination, the employee is entitled to a distribution equal to the value of the assets in the employee's deferral account on or around the employee's last day of employment.  (*Id*. at § 8.2.)

### a.   The DIF's Administrative Procedures.

Section 10 of the DIF establishes a committee to administer the Plan.  (*Id*. at § 10.)  Section 10.2.1 provides, "The Committee will have full and exclusive discretionary power and authority to operate and administer the Plan, including without limitation exclusive discretionary power and authority: . . . (B) to determine questions of eligibility, deferral and forfeiture . . . (D) to determine entitlement to Distributions."  (Compl, Exh. 2 at § 10.2.1.)

### 2.   The LTIPA Plan

The LTIPA Plan provides "long-term incentives and rewards to certain key staff and executives" employed by Allianz.  (Compl. Exh. 1 at § 1.)  The Plan calls for distribution of awards to eligible, participating employees after successive three-year periods ("LTIPA Period"), beginning each January 1 and ending on December 31, three years later.[1]  (*Id*. at § 4; Compl. at ¶ 15.)  Unless a participating employee's employment is terminated, the employee's award is distributed by the Plan administrator within 90 days after each three-year period.  (Compl. Exh. 1 at § 6.)   The Plan also gives the Plan Administrator discretion to select a different LTIPA Period, and to establish additional LTIPA Periods.  (*Id*. at § 4.)

If a participating employee is terminated for cause, he or she forfeits any award under the Plan.  (*Id*. at § 7.)  If a participating employee is terminated prior to the end of a LTIPA Period for early retirement, retirement, involuntary termination without cause, or a planned termination, the employee is entitled to at least some portion of the award under the Plan provisions, which amounts are distributed the following year.  (*Id*.)  Because each year begins a new three-year LTIPA period, at any given time after the initial three-year period, no less than two years' of awards, a "substantial

---

[1] For example, the initial LTIPA period set forth in Exhibit 1 to the Complaint begins January 1, 2011 and ends December 31, 2013.  (Compl. Exh. 1 at § 4.)  The second LTIPA period therefore begins January 1, 2012 and ends December 31, 2014 and so on.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION                                          5.                          Case No. 3:14-cv-02220-JCS

1  portion of [ ] annual compensation," are deferred to the date of each participating employee's

2  employment termination or beyond. (Compl. at ¶ 15.)

3                          a.      The LTIPA's Administrative Procedures.

4          The LTIPA is administered by a Plan Administrator. (Compl., Exh. 1, at § 3(a).) The Plan

5  provides that "[t]he Plan Administrator shall have complete control over the administration of the

6  Plan and shall have the authority in its sole and absolute discretion to: ". . . (ii) construe, interpret

7  and implement the Plan; (iii) prescribe, amend and rescind rules and regulations relating to the Plan,

8  including rules and regulations governing its own operations; (iv) make all determinations necessary

9  or advisable in administrating the Plan …" (*Id.* at § 3(b).) Finally, the Plan provides that "the

10  determination of the Plan Administrator on all matters relating to the Plan and any amounts payable

11  thereunder shall be final, binding and conclusive on all parties." (*Id.* at § 3(c).)

12          Section 9(f) of the LTIPA provides, "Any dispute, controversy or claim between the relevant

13  Participating Employer and any Participant arising out of or relating to or concerning the provisions

14  of the Plan shall be finally settled by the American Arbitration Association (the "AAA") in

15  accordance with the commercial arbitration rules of the AAA. Prior to arbitration, all disputes,

16  controversies or claims maintained by any Participant must first be submitted to the Plan

17  Administrator in accordance with claim procedures determined by the Board in its sole discretion."

18  (Compl, Exh. 1.)

19          **B.      Plaintiff's Employment Termination And Lawsuit**

20          In October 2013, defendant Allianz Global Investors U.S. LLC terminated Plaintiff's

21  employment for violation of company policies. (Compl. at ¶¶ 3, 17-22.) As referenced above, under

22  both the LTIPA and the DIF plans, participants are not entitled to compensation if they are

23  terminated for cause. (Compl at ¶ 2, Exh. 1 at § 7(a), Exh. 2 at § 8.1.) Plaintiff's termination was

24  characterized as "for cause," and thus Plaintiff was not paid benefits under either the DIF or LTIPA

25  Plan. (Compl. at ¶ 3.)

26          On or about April 9, 2014, Plaintiff filed suit in San Francisco Superior Court, alleging

27  claims of breach of contract, failure to pay earned wages, waiting time penalties, and conversion.

28  (Compl. at ¶¶ 29-54.) On May 14, 2014, Defendants removed the case to this Court.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION                                    6.                    Case No. 3:14-cv-02220-JCS

1

## III. ALLIANZ IS ENTITLED TO DISMISSAL OF PLAINTIFF'S COMPLAINT

2

### A. Where, As Here, The Complaint Lacks Sufficient Facts To Constitute A Cognizable Legal Theory, Dismissal Is Appropriate.

3

4      To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil

5  Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible

6  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6).

7  Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive

8  merits, as a general rule "the court may not consider any materials beyond the pleadings in ruling on

9  a 12(b)(6) motion." *Branch v. Tunnell*, 14 F. 3d 449, 453 (9th Cir 1994) (overruled on other

10 grounds). However, in ruling on a motion to dismiss, "a court may take judicial notice of matters of

11 public record." *Lee v. City of Los Angeles*, 250 F. 3d 668, 688-689 (9th Cir. 2001).

12     Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient

13 facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F. 2d 696, 699

14 (9th Cir. 1988) (overruled in part on other grounds); *see also Robertson v. Dean Witter Reynolds,*

15 *Inc.*, 749 F. 2d 530, 533-534 (9th Cir. 1984). While the court must assume the complaint's factual

16 allegations are true, "legal conclusions need not be taken as true merely because they are cast in the

17 form of factual allegations." *Silvas v. E*Trade Mortg. Corp.*, 421 F. Supp. 2d 1315, 1317 (S.D. Cal.

18 2006). "Nor is the court required to accept as true allegations that are merely conclusory,

19 unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*,

20 266 F. 3d 979, 988 (9th Cir. 2001). Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis

21 of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989) (overruled in part

22 on other grounds).

23     Similarly, under Rule 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over

24 the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction can never be

25 forfeited or waived and federal courts have a continuing independent obligation to determine whether

26 subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976

27 (9th Cir. 2012) (internal quotation marks and citation omitted).

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION                                7.                        Case No. 3:14-cv-02220-JCS

**B.    The DIF and LTIPA Plans Are Employee Benefit Plans Governed By ERISA**

ERISA broadly defines the terms "employee pension benefit plan" and "pension plan" to include any plan established or maintained by an employer that, by its express terms: "results in a deferral of income by employees for periods extending to a termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the methods of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2)(A)(ii).

The definition of pension plans subject to ERISA has been interpreted very broadly in the Ninth Circuit: "ERISA's definition of a pension plan is so broad, *virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan*, whether or not the parties intended to do so." *Modzelewski v. RTC,* 14 F.3d 1374, 1376-77 (9th Cir. 1994) (emphasis added).

As described above, the DIF Plan explicitly calls for payment of distributions upon the occurrence of four events: (1) the participating employee's separation from service (early retirement, retirement, termination without cause, and planned termination); (2) the date the participating employee becomes disabled; (3) the participating employee's date of death; or (4) the occurrence of an unforeseen emergency. (Compl, Exh. 2 at § 9.1.) The Plan also allows the Participating Employer discretion to establish a deferral period that covers any period of time, and distributions are made upon the expiration of the period if not previously paid or forfeited. (*Id.* at §§ 2; 9.1.)

As set forth above, the LTIPA Plan calls for distribution of awards to eligible, participating employees after successive three-year periods, beginning each January 1 and ending on December 31, three years later. (*Id.* at § 4.) Because each year begins a new three-year LTIPA period, at any given time after the first three years, no less than two years' awards under the Plan are deferred to the date of each participating employee's employment termination or beyond. *Spitz v. Berlin Indus., Inc.*, 1994 US Dist. LEXIS 1576, at *15 (N.D. Ill. 1994) (phantom stock plan is an ERISA retirement plan because phantom stock could not be fully redeemed until age 60, death, disability, or termination of employment; partial redemptions over successive five-year periods did not defeat retirement plan conclusion). In addition, the LTIPA gives the Plan Administrator discretion to select

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION

8.

Case No. 3:14-cv-02220-JCS

a different LTIPA Period, and to establish additional LTIPA Periods. ((Compl, Exh. 1., at § 4.) This discretion allows the Plan Administrator to enact Periods that result in deferral beyond termination.

The Plans at issue here are distinguishable from benefit plans that operate primarily as bonus or incentive programs and are not subject to ERISA jurisdiction. *Oatway v. American International Group, Inc.*, 325 F.3d 184, 188 (3d Cir. 2003); *see also Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 934 (8th Cir. 1999) (phantom stock plan was a bonus plan exempt from ERISA, where payments were deferred for a fixed number of years). Specifically, the Department of Labor, in its regulations, has interpreted ERISA employee benefit plans to exclude "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are *systematically deferred* to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c) (emphasis added).

In *Oatway*, for example, the Third Circuit determined that a stock option plan was not an employee benefit plan under ERISA where the "stock options were discretionary, given in recognition of special service, and awarded in addition to [ ] regular compensation." *Oatway*, 325 F.3d at 188.

Neither the DIF nor the LTIPA plan falls into this carve-out. The DIF Plan defers all distributions until termination of employment, death, disability or an unforeseen emergency, or until the end of the Deferral Period, which is established at the discretion of the Participating Employer. (Compl. Exh. 2 at Appendix 3, § 9.1; §§ 2; 9.1)

The calculation of distributions under the LTIPA are not discretionary, as they are expressly governed by a formula. (Compl. Exh. 1 at § 6(b).) Distributions are also not in recognition of special service, but based on company earnings. (Compl. Exh. 1 at § 6(c).) Finally, by Plaintiff's own admission, the distributions under the LTIPA were not awarded in addition to regular compensation, but "constituted a substantial portion of his annual compensation." (Compl. at ¶ 15.)

Most critically, because after the initial three-year period, a new LTIPA period commences each year, the distributions are "systematically deferred" until termination of employment or beyond, such that it constitutes the systematic deferral required for ERISA benefit plans. 29 C.F.R. § 2510.3-

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION

9.

Case No. 3:14-cv-02220-JCS

2(c).  The Plan Administrator also has discretion to establish a longer deferral period than the three-year period.  ((Compl, Exh. 1., at § 4.)

Given the broad definition promulgated by the Ninth Circuit as to what constitutes a "pension plan"—i.e., *virtually any contract that provides for some type of deferred compensation*--both Plans are subject to ERISA.  29 U.S.C. § 1002(2)(A)(ii).

### 1.    The DIF And LTIPA Plans Are Top Hat Employee Benefit Plans Governed By ERISA.

The DIF and LTIPA Plans are top hat plans, which are defined as: "a plan which is unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1); *Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1486 (N.D. Cal. 1993).

Both the LTIPA and DIF meet the requirements for a top hat plan because they are (1) unfunded, and maintained by Defendants primarily for the purpose of (2) providing deferred compensation to (3) a select group of management or highly compensated employees.

### a.    The Plans Are Unfunded.

The DIF Plan explicitly states, "[t]he obligations of the Participating Employers under the Plan will be unfunded and unsecured . . . [t]o the extent that a Participant or a Participant's heir has the right to receive Distributions from a Participating Employer, in respect of an Award of a Deferral Account or an Investment Account, that right will be no greater than the right of an unsecured general creditor of the Participating Employer."  (Compl, Exh. 2, at § 11.3.)

Similarly, the LTIPA Plan states, "The Awards are intended to be unfunded for purposes of U.S. federal income tax and shall represent at all times unfunded and unsecured obligations of the Participating Employer to be satisfied solely out of the Participating Employer's general assets subject to the claims of its creditors."  (Compl, Exh. 1, at § 9(e).)

### b.    The Plans Provide Deferred Compensation For A Select Group Of Employees

A group of employees is "select" when it is composed of "members that are both carefully chosen and a solid and unmistakable minority."  *Duggan v. Hobbs*, 1995 U.S. Dist. LEXIS 4569, at *10-11 (N.D. Cal. Mar. 30, 1995) (*aff'd by* 99 F.3d 307 (9th Cir. 1996)).  Employees are "highly

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL ARBITRATION                    10.                    Case No. 3:14-cv-02220-JCS

compensated" where they earn substantially more than employees not covered by the plan.  *Id*. at *12-13.  The DIF states that it "will be operated as a deferred compensation plan for selected Eligible Employees," and defines Eligible Employee as an employee "whose aggregate Compensation for that Plan Year is greater than EUR 150,000 (or generally consistent thresholds in host country currencies), or such other amounts specified from time to time by the Committee." (Compl, Exh. 2, at Preamble; § 1.)    The LTIPA states that its purpose is "to provide long-term incentives and rewards to certain key staff and executives of Allianz Global Investors AG, Munich . . . and its subsidiaries and certain affiliates."  (Compl, Exh. 1, at § 1.)

The Plans also provide for deferred compensation.  The Ninth Circuit construes the definition of deferred compensation broadly.  For instance, in *Duggan*, the plan at issue provided for the payment of some benefits contemporaneous with retirement, and other benefits after retirement.  1995 U.S. Dist. LEXIS 4569, at *15.  In the Court's discussion of whether the plan provided the deferred compensation that is necessary to qualify as a top hat plan, the Court rejected the plaintiff's argument that the plan did not provide for deferred compensation because it provided for some of the benefits to be paid contemporaneous with the plaintiff's retirement.  *Id*. at *15.  Instead, the Court held that it

> "[A]dopts an inclusive view of the deferred compensation requirement and finds that the Plan was maintained for the purpose of providing deferred compensation.  Whether a plan is maintained for the purpose of providing deferred compensation is a question not addressed in the statute and not much discussed in the case law. Deferred compensation generally refers to money which, by prior arrangement, is paid to the employee in tax years subsequent to that in which it is earned, [ ] and a deferred compensation plan may do little more than simply delay distribution of cash payments to employees."

*Id*. at *15-16 (internal citations and quotations omitted).

In *Carr*, the plans at issue provided for deferral of payment until after retirement or termination of employment, but also provided that employees could elect to be repaid on another date as specified in the deferral notice. 816 F. Supp. at 1488.  The Court noted that top hat plans "need not necessarily result 'in a deferral of income . . . for periods extending to the termination of covered employment or beyond,' as would pension benefit plans."  *Id*.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL ARBITRATION                11.                Case No. 3:14-cv-02220-JCS

Both the DIF and LTIPA Plans provide for deferred compensation because neither awards any compensation in the year in which it was earned: the DIF provides for a distribution upon termination of employment, death, disability or emergency, or upon the end of the Deferral Period established by the Participating Employer; the LTIPA provides for a distribution no sooner than after three years, or at the end of the LTIPA Period established by the Plan Administrator.

Accordingly, the LTIPA and DIF Plans are top hat plans under ERISA.

## C. Plaintiff's First And Second Causes Of Action Should Be Dismissed For Failure To Exhaust Administrative Remedies As Required By ERISA [2]

It is well-settled that top hat plans are subject to ERISA's enforcement provision setting out the exclusive means for a participant to enforce their rights under a plan. *See Grigg v. Griffith Co.*, 2014 U.S. Dist. LEXIS 3336, at *11 (E.D. Cal., Jan. 9, 2014) (dismissing the plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing because they were based on an ERISA retirement plan, and thus preempted).

ERISA's enforcement provision provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

It is also a well-established legal principle, however, that ERISA claimants are required to exhaust internal review and appeal procedures before bringing suit. *Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995); *see also Kinkead v. Southwestern Bell Corp. Sickness and Accident Disability Benefit Plan*, 111 F.3d 67 (8th Cir. 1997) (affirming lower court's dismissal of action due to plaintiff's failure to demonstrate he sought internal review of disputed a denial of benefits under a disability benefit plan); *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 33 (5th Cir. 1993).

---

[2] Plaintiff's First and Second Causes of Action, though styled as breach of contract claims, are effectively claims for benefits under ERISA and are subject to federal law governing ERISA claims. To the extent Plaintiff contends his breach of contract claims should be determined in accordance with state contract law, these claims are also preempted under ERISA for the reasons described below. *See, e.g., Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007-08 (9th Cir. 1998) (state law tort and contract claims); *Nevill v. Shell Oil Co.*, 835 F.2d 209, 212 (9th Cir. 1987) (state law breach of contract, fraud, breach of the covenant of good faith and fair dealing claims preempted; claim for benefits reviewed under ERISA's arbitrary and capricious standard).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL ARBITRATION                12.                Case No. 3:14-cv-02220-JCS

ERISA's exhaustion requirement is not lightly disregarded, as it serves several important Congressional purposes: (1) minimizing the number of meritless lawsuits; (2) promoting consistency in the treatment of claims; (3) providing a non-adversarial dispute resolution process; and (4) cutting the expense and amount of time necessary to resolve disputed benefit claims. *Powell v. AT&T Communications, Inc.*, 938 F.2d 823, 826 (7th Cir. 1991). A contrary view would undermine the claims review process contemplated by Congress and the Secretary of Labor and also increase federal lawsuits at the expense of plans, participants and the courts. Diluting the exhaustion requirement could ultimately result in higher administrative expenses and fewer benefits to participants, a situation Congress expressly intended to discourage. *Cf. FMC Corp. v. Holliday*, 498 U.S. 52, 60 (1990).

In *Diaz*, the District Court granted the defendants' motion for summary judgment because the claimants had failed to exhaust an ERISA plan's internal administrative remedies. 50 F.3d at 1482-83. The Court of Appeal for the Ninth Circuit upheld the dismissal, explaining:

> Quite early in ERISA's history, we announced as the general rule governing ERISA claims that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court. Although not explicitly set out in the statute, the exhaustion doctrine is consistent with ERISA's background, structure and legislative history and serves several important policy considerations, . . . "consequently the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and [ ] as a matter of sound policy they should usually do so."
>
> By not submitting a written appeal to the benefits administrator [the claimant] failed to comply with the Plan's internal review procedures and hence did not exhaust the available administrative remedies.

*Id*. at 1483 (quoting *Amato v. Bernard*, 618 F.2d 559, 566-68 (9th Cir. 1980) (citations and footnote omitted).

In dismissing the claimants' complaint, the *Diaz* court rejected their argument that the notice of denial provided to them was defective and rejected their argument that exhausting remedies would have been futile. *Id*. at 1484-86.

Here, both the LTIPA and the DIF Plans contain internal review processes. The DIF provides, "The Committee will have full and exclusive discretionary power and authority to operate and administer the Plan, including without limitation exclusive discretionary power and authority: . .

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION

13.

Case No. 3:14-cv-02220-JCS

. (B) to determine questions of eligibility, deferral and forfeiture . . . (D) to determine entitlement to Distributions." (Compl, Exh. 2, at § 10.2.1.)  Similarly, the LTIPA provides, "Prior to arbitration, all disputes, controversies or claims maintained by any Participant must first be submitted to the Plan Administrator in accordance with claim procedures determined by the Board in its sole discretion." (Compl, Exh. 1., at § 9(f).)

Plaintiff has not alleged he submitted any claim to the Plan Administrators, a requirement expressly set forth in both Plans.  Accordingly, under well-established law, Plaintiff's claims for breach of contract must be dismissed.

### D. In The Alternative, Plaintiff's Claim For Breach Of The LTIPA Plan Should Be Compelled To Arbitration And The Claim For Breach Of The DIF Plan Stayed.

#### 1. The LTIPA Is Governed By The Federal Arbitration Act.

If the Court does not dismiss Plaintiff's claims for failure to exhaust, the arbitration agreement under the LTIPA should be enforced because there is an agreement to arbitrate, and the claims at issue are covered by the arbitration agreement.  Section 9(f) of the LTIPA provides, "Any dispute, controversy or claim between the relevant Participating Employer and any Participant arising out of or relating to or concerning the provisions of the Plan shall be finally settled by the American Arbitration Association (the "AAA") in accordance with the commercial arbitration rules of the AAA." (Compl, Exh. 1.)

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, was passed to reverse longstanding judicial hostility toward arbitration agreements and to place them upon the same footing as other contracts. *See AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  To this end, Section 2 of the FAA provides for enforcement of arbitration provisions in any contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.  The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL ARBITRATION                    14.                    Case No. 3:14-cv-02220-JCS

Here, the LTIPA governs deferred compensation to highly-paid Allianz employees, such as Plaintiff, who are awarded for how they manage hundreds of millions or even billions of dollars of mutual fund assets on behalf of Allianz's clients. (Compl. at ¶¶ 13, 14.) Accordingly, the LTIPA clearly involves commerce and is governed by the FAA.

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This provision reflects a "'liberal federal policy favoring arbitration,' . . . and the 'fundamental principle that arbitration is a matter of contract . . . .'" *AT&T Mobility, supra,* 131 S. at 1745. California law similarly favors enforcement of arbitration agreements. CAL. CIV. PROC. CODE § 1281; *Armendariz v. Found. Health Psychcare Serv., Inc.,* 24 Cal. 4th 83, 113-14 (2000). The FAA not only places arbitration agreements on equal footing with other contracts, but also amounts to a "congressional declaration of a liberal federal policy favoring arbitration agreements." *Perry v. Thomas,* 482 U.S. 483, 489 (1987), *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 24 (1983). This liberal policy, "call[s] for an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp., supra,* 460 U.S. at 22.

The Supreme Court has consistently endorsed arbitration as an effective means of dispute resolution in employment cases. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 123-124 (2001) (arbitration agreement enforced when employee was required to sign agreement during application process); *Gilmer,* 500 U.S. at 33 (enforcing agreement to arbitrate employment-related claims contained in securities representative registration that plaintiff was required to sign). If an arbitration agreement exists, "[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration . . . [.]" *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985).

There are only two gateway issues that need to be decided by a court when considering a motion to compel arbitration: (1) whether there is an agreement to arbitrate; and (2) whether the claims at issue are covered by the arbitration agreement. *Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1119 (9th Cir. 2008) (*citing Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000).

Once those two threshold issues have been decided, an arbitration agreement governed by the

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION                                            15.                          Case No. 3:14-cv-02220-JCS

FAA is presumed to be valid and enforceable. *Shearson/Am. Exp., Inc. v. McMahon,* 482 U.S. 220, 226-27 (1987) (overruled on other grounds). The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000). Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or of an allegation of waiver, delay, or a like defense of arbitrability." *Id., citing Moses H. Cone Mem'l Hosp., supra*, 460 U.S. at 24-25.

Here, there is no dispute that the claims at issue are covered by the arbitration agreement. Section 9(f) of the LTIPA expressly governs "[a]ny dispute, controversy or claim" between Allianz and Plaintiff arising out of the Plan. (Compl. Exh. 1 at § 9(f).) Plaintiff has expressly pled his breach of contract claim as a breach of the LTIPA. Accordingly, the dispute is clearly covered by the arbitration agreement.

There is also no legitimate dispute that an agreement to arbitrate exists. "[A]rbitration is a matter of contract." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Courts must "interpret the contract by applying general state-law principals of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).

Plaintiff will no doubt contend that no agreement to arbitrate exists because he did not sign the LTIPA indicating his assent. While true, Plaintiff cannot claim breach of the LTIPA by Allianz while at the same time insisting he did not agree to the LTIPA's terms. *See, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (a party is precluded "from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." (citations omitted)). If that is Plaintiff's position, his breach of contract claims should be dismissed based on the fact that no contract exists. But, because Plaintiff wishes to obtain the benefits of the LTIPA, he must also submit to the obligations set forth therein.

Because an arbitration agreement exists, and the claims at issue are covered by the

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION                      16.                      Case No. 3:14-cv-02220-JCS

1  agreement, it is presumed to valid and enforceable.

2  **2.   Plaintiff's Claim For Breach of Contract (DIF) Should Be Stayed**

3  If Plaintiff's claim for breach of the LTIPA is compelled to arbitration, Plaintiff's claim for

4  breach of the DIF should be stayed pending the arbitration.  This is because the determination of

5  whether Plaintiff is entitled to compensation under the LTIPA and the DIF will involve the same

6  primary question: whether Plaintiff was terminated for cause.

7  The decision to stay non-arbitrable claims is within the discretion of the Court, and district

8  courts have held that it is appropriate to grant a stay where the pending arbitration is an arbitration in

9  which issues involved in the case also may be determined.  *NS Holdings LLC Inc. v. Am. Int'l Group,*

10  *Inc.*, 2010 U.S. Dist. LEXIS 125077, at *3 (C.D. Cal. 2010) (*citing United States for the Use &*

11  *Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1426-27 (9th Cir. 1985);

12  *Roderick v. Mazzetti & Assocs.*, 2004 U.S. Dist. LEXIS 22911, at *10-11 (N.D. Cal. 2004).  Courts

13  have found stays of non-arbitrable claims appropriate where the claims in the court action and those

14  in the arbitration arise out of the same series of alleged acts, and where a stay would minimize

15  inconsistent results and conserve judicial resources.  *Swift v. Zynga Game Network, Inc.*, 805 F.

16  Supp. 2d 904, 917 (N.D. Cal. 2011); *Roderick*, 2004 U.S. Dist. LEXIS 22911, at *38-39.

17  That is certainly the case here.  The LTIPA and DIF Plans have nearly identical for cause

18  definitions, such that a determination that Plaintiff was terminated for cause under the LTIPA would

19  likely have a determinative effect on whether he was terminated for cause under the DIF Plan as

20  well.  (*Cf.* Compl, Exh. 1, at § 2 and Compl, Exh. 2, at § 1.)  At a minimum, the arbitration of

21  Plaintiff's LTIPA claim will establish all of the foundational facts necessary to evaluate whether his

22  termination met the definition of "for cause" under the DIF Plan as well.

23  Therefore, the Court should exercise its discretion to stay Plaintiff's DIF claim pending the

24  outcome of arbitration of the LTIPA claim.

25  **E.   Plaintiff's State Law And Tort Claims Should Be Dismissed Because They Are Preempted By ERISA**

26  A plaintiff is preempted from bringing state law claims which "relate to" an ERISA-

27  regulated benefit plan.  *Winterrowd v. American General Annuity Insurance Co.*, 2003 U.S. App.

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION

17.

Case No. 3:14-cv-02220-JCS

LEXIS 3893, at *6 (9th Cir. 2003).   "If a claim alleges a denial of benefits, ERISA preempts it."

*Smith v. Southwestern Bell Telephone Company*, 2003 U.S. Dist LEXIS 511, at *6 (N.D. Cal. 2003)

(emphasis added).   The Supreme Court in *District of Columbia v. Greater Washington* explained as

follows:

> We have repeatedly stated that a law 'relates to' a covered employee
> benefit plan for purposes of section 514(a) 'if it has a connection with
> or reference to such a plan.' . . . This reading is true to the ordinary
> meaning of 'relate to' . . . and thus gives effect to the 'deliberately
> expansive' language chosen by Congress. . . .   Under section 514(a),
> ERISA pre-empts any state law that refers to or has a connection with
> covered benefit plans . . .'even if the law is not specifically designed to
> affect such plans, or the effect is only indirect.' . . . and even if the law
> is consistent with ERISA's substantive requirements.

506 U.S. 125, 129-30 (1992) (all internal citations and footnote omitted); *accord*, *Joanou v. Coca-*

*Cola Co.*, 26 F.3d 96, 99 (9th Cir. 1994); *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d

812, 817 (9th Cir. 1992).   A plaintiff does not have to make a reference to "ERISA" for a claim to be

preempted.   *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1130 (9th Cir. 1992).

Here, Plaintiff's breach of contract claims are based directly on Allianz's denial of benefits

under the Plans, and his claims for failure to pay earned wages, waiting time penalties, and

conversion are each a direct consequence of this alleged breach of contract.   The Supreme Court and

Ninth Circuit have routinely held that state law and tort claims related to claims for benefits under

ERISA are preempted.   *See, e.g.*, *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007-08 (9th

Cir. 1998) (state law tort and contract claims); *Nevill v. Shell Oil Co.*, 835 F.2d 209, 212 (9th Cir.

1987) (breach of contract, fraud, breach of the covenant of good faith and fair dealing).   In addition,

courts in other circuits have specifically held that state law wage and hour claims related to claims

for benefits under ERISA are preempted.   For example, in *Rinaldi v. CCX Inc.*, the plaintiff brought

claims for breach of contract and violation of the North Carolina Wage and Hour Act for breach of

his employment agreement, which provided that if the plaintiff was terminated for cause, he was not

entitled to any severance pay or benefits after termination.   2008 U.S. Dist. LEXIS 77394, at *3-4

(W.D.N.C.).   The court held that the employment agreement was an employee welfare plan under

ERISA, and because the wage and hour claims were based on the employment agreement claims,

they were preempted by ERISA.   *Id.* at *21.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION                          18.                    Case No. 3:14-cv-02220-JCS

1    Plaintiff's state law and tort claims are derivative of his claims for benefits and therefore

2    preempted by ERISA.  Accordingly, these claims must be dismissed.

3    **IV.    CONCLUSION**

4    Plaintiff's First and Second Causes of Action for breach of contract are preempted by ERISA

5    and, to the extent the Court construes these as claims for benefits under ERISA, they must be

6    dismissed for failure to exhaust administrative remedies.

7    If the Court does not dismiss Plaintiff's breach of contract claims, Plaintiff's claim for breach

8    of the LTIPA should be compelled to arbitration because it is subject to a valid arbitration

9    agreement, and Plaintiff's claim for breach of the DIF should be stayed pending that arbitration.

10   Plaintiff's Third, Fourth and Fifth Causes of Action are derivative state law and tort claims

11   and are preempted under ERISA.

12   For all of these reasons, Plaintiff's Complaint must be dismissed.

13

14

15   Dated: May 21, 2014

16

17                                                  */s/ Andrew M. Spurchise*
                                                    GARRY G. MATHIASON
18                                                  ANDREW M. SPURCHISE
                                                    LITTLER MENDELSON, P.C.
19                                                  Attorneys for Defendants
                                                    ALLIANZ ASSET MANAGEMENT OF
20                                                  AMERICA L.P., ALLIANZ ASSET
                                                    MANAGEMENT OF AMERICA LLC and
21                                                  ALLIANZ GLOBAL INVESTORS U.S. LLC

22   Firmwide:126920180.8 054881.1041

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

MOTION TO DISMISS / COMPEL
ARBITRATION                              19.                      Case No. 3:14-cv-02220-JCS