Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page1 of 20

GARRY G. MATHIASON, Bar No. 051119
ANDREW M. SPURCHISE, Bar No. 245998
JESSICA X. ROTHENBERG, Bar No. 284823
LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, California 94108.2693
Telephone: 415.433.1940
Facsimile: 415.399.8490

SUSAN K. HOFFMAN, Bar No. 19498
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
Telephone: 267.402.3000
Facsimile: 267.402.3131

Attorneys for Defendants
ALLIANZ ASSET MANAGEMENT OF AMERICA L.P., ALLIANZ ASSET MANAGEMENT OF AMERICA LLC and ALLIANZ GLOBAL INVESTORS U.S. LLC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEUNG MINN,

Plaintiff,

v.

ALLIANZ ASSET MANAGEMENT OF AMERICA L.P., a Delaware limited partnership, ALLIANZ ASSET MANAGEMENT OF AMERICA LLC, a Delaware limited liability company, ALLIANZ GLOBAL INVESTORS U.S. LLC, a Delaware limited liability company, and DOES 1-25,

Defendants.

Case No. 4:14-cv-02220-PJH

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND FOR A STAY**

**[Fed. R. Civ. Pro. 12(b)(1) &12(b)(6)]**

Date: July 9, 2014
Time: 9:00 a.m.
Courtroom: 3

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

Case No. 4:14-cv-02220-PJH

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION .......... 1

II. ALLIANZ IS ENTITLED TO DISMISSAL OF PLAINTIFF'S COMPLAINT .......... 2

A. The DIF and LTIPA Plans Are Deferred Compensation Plans Governed By ERISA, Not Bonus Plans .......... 2

1. The DIF And LTIPA Plans Are Top Hat Employee Benefit Plans And Therefore Governed By ERISA .......... 5

B. Plaintiff's First And Second Causes Of Action Should Be Dismissed For Failure To Exhaust Administrative Remedies .......... 8

C. If There Is No Obligation To Comply With The Claims Procedure, Plaintiff Is Still Obligated To Arbitrate His LTIPA Claims .......... 9

1. The Choice Of Law Provision Is Valid; Delaware Law Supports Arbitration .......... 10

2. The Arbitration Agreement Is Not Procedurally Unconscionable Under California Law .......... 11

a. Plaintiff's Status As A Highly Compensated Executive Establishes The Absence Of Procedural Unconscionability .......... 11

b. The Alleged Failure To Provide Plaintiff With The AAA Rules Is Irrelevant To Unconscionability .......... 12

3. The Arbitration Agreement Is Not Substantively Unconscionable Under California Law .......... 13

a. The Existence Of Claims Procedures Does Not Support A Finding Of Substantive Unconscionability .......... 13

b. The AAA Commercial Arbitration Rules Are Fair And Do Not Support A Finding Of Unconscionability .......... 14

4. The Arbitration Agreement Is Mutual And Enforceable .......... 14

III. CONCLUSION .......... 15

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199 (1998) ....15

*Alexander v. Brigham & Women's Physicians Org., Inc.*, 513 F.3d 37 (1st Cir. 2008)....7

*Armendariz v. Foundation Health Psychcare,* 24 Cal. 4th 83 (2000) ....9, 14

*Callan v. Merrill Lynch & Co., Inc.*, 2010 WL 3452372 (S.D. Cal. Aug. 30, 2010) ....6

*Carr v. First Nationwide Bank*, 816 F. Supp. 1476 (N.D. Cal. 1993) ....5

*Chappel v. Laboratory Corp. of Am.*, 232 F. 3d 719 (9th Cir. 2000) ....13

*Demery v. Extebank Deferred Comp. Plan (b),* 216 F.3d 283 (2d Cir. N.Y. 2000)....6

*Digiacomo v. Ex'Pression Ctr. For New Media, Inc.*, 2008 U.S. Dist. LEXIS 70099 (N.D. Cal. Sept. 15, 2009) ....14

*Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975 (2010) ....11

*Duggan v. Hobbs*, 1995 U.S. Dist. LEXIS 4569 (N.D. Cal. Mar. 30, 1995)....6, 7

*Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215 (2d Cir. 2006)....8, 9

*Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929 (8th Cir. 1999) ....4, 5, 6

*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004) ....12

*Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) ....12

*Hewlett-Packard Co. v. Barnes*, 425 F. Supp. 1294 (N.D. Cal. 1977) ....1

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

*Holdings Ltd. v. Clarium Capital Mgmt. LLC*, 622 F. Supp. 2d 825 (N.D. Cal. 2007) ....................14

*Ingle v. Circuit City Stores, Inc.*, 328 F. 3d 1165 (9th Cir. 2003) ....................15

*Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309 (1986) ....................14

*Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283 (2005) ....................10

*Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676 (2014) ....................12, 13

*Lopez v. Am. Express Bank, FSB*, 2010 U.S. Dist. LEXIS 76356 (C.D. Cal. June 2, 2010) ....................10

*Majkowski v. Am. Imaging Mgmt. Serv., LLC*, 913 A.2d 572 (Del. Ch. 2006)....................10

*Modzelewski v. RTC*, 14 F.3d 1374 (9th Cir. 1994) ....................1

*Mortensen v. Bresnan Comm'n, LLC*, 722 F. 3d 1151 (9th Cir. 2013) ....................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)....................10

*Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980) ....................5

*Nedlloyd Lines BV v. Superior Court*, 3 Cal. 4th 459 (1992) ....................10

*Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009) ....................11

*Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425 (2012) ....................10

*Peng v. First Republic Bank*, 219 Cal. App. 4th 1462 (2013) ....................12, 15

*Roman v. Superior Court*, 172 Cal. App. 4th 1462 (2009) ....................11

*Segovia v. Schoenmann,* 404 B.R. 896 (N.D. Cal. 2009) ....................4, 5

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

*Slaughter v. Stewart Enters., Inc.*, 2007 U.S. Dist. LEXIS 56732 (N.D. Cal. Aug. 3, 2007) .......... 14

*Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109 (2013) .......... 9, 10, 11

*Trivedi v. Curexo*, 189 Cal. App. 4th 387 (2010) .......... 12

*Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924 (N.D. Cal. 2012) .......... 12

**STATUTES**

29 U.S.C. § 1002(2)(A)(ii) .......... 3

29 U.S.C. § 1101(a)(1) .......... 5

ERISA .......... passim

**OTHER AUTHORITIES**

29 C.F.R. § 2510.3-2(c) .......... 1

29 C.F.R. § 2560.503-1(b) .......... 13

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page6 of 20

# I. INTRODUCTION

The fundamental purpose of ERISA is to provide a nationwide system ensuring that covered benefits will be uniformly provided and protected. In furtherance of this purpose, federal courts have long emphasized the importance of federal preemption of benefit plans subject to ERISA, and the breadth of ERISA preemption. Preemption is essential for ensuring consistent rulings, a policy reflected in the "sweeping and precise language" of ERISA. *Hewlett-Packard Co. v. Barnes*, 425 F. Supp. 1294, 1200 (N.D. Cal. 1977) (discussing Congress' intention to "occupy the entire field of employee benefit plan regulation.").

In his Opposition, Plaintiff effectively takes the position that all plans with a "bonus" component cannot qualify as ERISA deferred compensation plans, even under the broad definition formulated by the Ninth Circuit in *Modzelewski v. RTC*, 14 F.3d 1374, 1375-77 (9th Cir. 1994) (employment contracts providing for payments to certain executives upon and after retirement, death or termination without cause constituted ERISA "top hat" pension plans). According to Plaintiff, a benefit plan can be a bonus plan or an ERISA-covered plan, but not both. This is not the law.

As stated in *Modzelewski*, an ERISA-covered plan may contain a number of different components:

> "[T]he salary continuation aspect of the agreements is ***merely one bundle of rights and obligations within a broader employment relationship***. This is not at all unusual. Because ERISA's definition of a pension plan is so broad, ***virtually any contract that provides for some type of deferred compensation*** will also establish a de facto pension plan, whether or not the parties intended to do so."
>
> *Modzelewski*, 14 F.3d at 1377 (emphasis added).

It is inherent in this principle that a benefit plan that provides for a distribution of awards during employment may, at the same time, constitute an ERISA-covered plan. In fact, ERISA's regulations expressly establish the type of bonus plan which also constitutes an ERISA-covered deferred compensation plan: those where some payments are "***systematically deferred*** to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c) (emphasis added). These are the types of Plans at issue here.

It is true that within the "bundle of rights and obligations" set forth in the Plans at issue here,

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION 1. Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page7 of 20

awards may be distributed following an initial three-year deferral period. However, unlike those plans cited in Plaintiff's Opposition found to be outside of ERISA's broad scope, the LTIPA and DIF Plans (the "Plans") do not provide for the merely sporadic, incidental payment of compensation upon termination of employment or beyond. Rather, in ***every case*** where a vested employee meets the requirements of the Plans, he or she receives some portion of the award upon retirement or termination of employment. Accordingly, regardless of what they are called, the result of the Plans is systematic deferral of a portion of income to retirement. The Plans, therefore, qualify as ERISA-covered plans, and Plaintiff's Complaint is preempted by ERISA and must be dismissed.[1]

If the Court finds ERISA jurisdiction exists, but construes Plaintiff's First and Second Causes of Action for breach of contract as viable claims for ERISA benefits under ERISA, these claims must still be dismissed for failure to exhaust administrative remedies. Unlike the case law relied upon by Plaintiff, the Plans at issue here ***expressly provide*** for a claims procedure. Plaintiff has been invited to submit his claim for benefits to the Plan Administrators and to date, failed to do so.

If the Court finds that Plaintiff is not required to first proceed through the claims procedure, Defendants are entitled to arbitration of Plaintiff's claim under the LTIPA Plan in light of the strong presumption in favor of arbitration, and Plaintiff's claim under the DIF Plan should be stayed pending arbitration. Arbitration is the appropriate forum to first determine whether the termination was with or without cause. Furthermore, Plaintiff has not met his burden of establishing unconscionability, and cannot claim benefits under the Plan while at the same time disclaiming the contractual obligations associated with the right to those benefits, including arbitration.

Accordingly, as described in detail below, Defendants' motion must be granted.

## II. ALLIANZ IS ENTITLED TO DISMISSAL OF PLAINTIFF'S COMPLAINT

### A. The DIF and LTIPA Plans Are Deferred Compensation Plans Governed By ERISA, Not Bonus Plans.

As stated in Defendants' moving papers, the LTIPA Plan calls for distribution of awards to

---

[1] Because both the motion to dismiss and motion for remand are scheduled to be heard the same day and much of Plaintiff's response to the motion to dismiss is to repeat verbatim its arguments on ERISA jurisdiction in its remand motion, this reply will not only address ERISA jurisdiction, but also will focus on the non-ERISA issues central to the motion to dismiss. Further briefing on ERISA jurisdiction will be provided in the opposition to the motion for remand.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

2.

Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page8 of 20

eligible, participating employees after successive three-year periods, beginning each January 1 and ending on December 31, three years later, with distributions potentially occurring sooner in the event of a participant's retirement. (Compl, Exh. 1 at § 4.) After the initial three-year period, distributions are made annually. However, due to the rolling three-year periods established by the Plan, at any time after the initial three-year period, two years' worth of compensation is continuously and systematically deferred until termination of employment. (*Id.* at § 4; Compl. at ¶ 15.)

The DIF Plan calls for the Participating Employer to establish a deferral period, and distributions are made upon the expiration of that period. (Compl., Exh. 2, at §§ 2; 9.1.) As Plaintiff points out, Defendants have established, as with the LTIPA, a deferral period of three years for the DIF award at issue in this case, with the first period beginning in February/March 2013, and ending in March of 2016. (Hicks Decl., Exh. 2.) However, the DIF Plan also has a provision applicable to United States employees (such as Plaintiff) that could, in certain circumstances, modify the established deferral period, and defer payment of distributions to the occurrence of the first of four events: retirement, death, disability or unforeseen emergency. (*Id.* at Appendix 3, § 9.1.) Regardless of the current deferral period, therefore, the DIF Plan clearly contemplates a scenario where all compensation under the DIF Plan is deferred to termination of employment or beyond.

ERISA broadly defines the terms "employee pension benefit plan" and "pension plan" to include any plan established or maintained by an employer that, by its express terms: "results in a deferral of income by employees for periods extending to a termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the methods of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2)(A)(ii).

Plaintiff's emphasis on the fact that distributions are made after the first three-year deferral period ignores the fact that because of the rolling three-year structure of the payouts, at any given time, no less than two years of awards are deferred to the end of the next deferral period and, inexorably, to the date of each participating employee's employment termination or beyond.

Notwithstanding this systematic deferral, Plaintiff emphasizes that the Plans are akin to stock plans, which have often been deemed bonus plans not governed by ERISA. This comparison does

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

3.

Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page9 of 20

not withstand scrutiny. First, the Plans are not analogous to stock plans because unlike in many stock plans, participants are not entitled to distributions at any time. For example, in *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 930, 933-34 (8th Cir. 1999), the stock plan provided that vested participants could redeem their shares at any time while still employed. The court noted that although a participant could postpone redemption until termination or retirement, that deferral was strictly at the option of the participant. *Id.* In contrast, under the Plans at issue here, participants are not entitled to distributions at any time – they are only entitled to distributions after the three-year deferral period, and at retirement or separation from employment (not for "Cause"). Participants also cannot choose whether to postpone payment of distributions to termination or retirement.

More significantly, however, the Plans are not akin to stock plans because they clearly contemplate deferred compensation. Stock plans do not. In *Segovia v. Schoenmann (In re Segovia)*, this Court held a stock plan was not subject to ERISA. 404 B.R. 896 (N.D. Cal. 2009). This Court emphasized the fact that the stock option plan did not provide for deferred compensation. *Segovia*, 404 B.R. at 922 ("There is nothing in the plan itself, or in the record before this court, which suggests that the LTICP systematically provided for ***deferred income and/or retirement benefits***.").

Moreover, the plan's prospectus in *Segovia* indicated a clear intent to provide current income. For instance, it explicitly stated that the plan is not subject to ERISA. *Id.* at 904. In contrast, the Plans here have no such language, and instead, contain language indicating the Plans are top hat plans, and thus intended to be subject to ERISA. The DIF Plan states, "[t]he obligations of the Participating Employers under the Plan will be unfunded and unsecured . . ." and that it "will be operated as a deferred compensation plan for selected Eligible Employees." (Compl, Exh. 2, at Preamble; §§ 1, 11.3.) Similarly, the LTIPA Plan states, "The Awards are intended to be unfunded for purposes of U.S. federal income tax . . ." and that its purpose is "to provide long-term incentives and rewards to certain key staff and executives . . ." (Compl, Exh. 1, at §§ 1, 9(e).) Here, Defendants do not dispute that part of the purpose of the Plans is to reward employees during their employment. However, it is clear, and Plaintiff admits, that the Plans are also designed to reward employees who stay with the Company until their retirement.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

4.

Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page10 of 20

Like the plan in *Emmenegger*, the plan in *Segovia* also provided that the plaintiff could withdraw the vested portion of her stock options at any time, and did not defer withdrawal or payment until retirement. *Id.* at 922. As detailed above, the DIF and LTIPA Plans clearly defer compensation and do not allow the withdrawal or payments of funds at will.

Plaintiff's reliance on *Murphy v. Inexco Oil Co.*, 611 F.2d 570 (5th Cir. 1980) is also misplaced, because *Murphy* involved a unique plan with no similarities to the DIF and LTIPA Plans. In *Murphy*, employees were assigned participation units (royalty interests) in drilling prospects, which accrued when the drilling prospect began to produce, and continued for as long as the prospect produced. The royalty interest was paid on the production on an annual basis whenever the production was realized. *Id.* at 575. The Court noted that the plan "provides for benefits to be paid immediately to employees, ***not for their deferment in any fashion, systematic or otherwise***; it was evidently designed to provide current rather than retirement income . . . [s]ome of the proceeds of this right might be paid to an employee after he had retired or otherwise left Inexco, or even to his heirs after his death, but this arose out of the inherent characteristics of the property used to pay the bonus." *Id.* at 575-76 (emphasis added).

As this Court explained in *Segovia*, in *Murphy*, the court found that the plan provided ***current*** income, and the fact that some payments may be made after an employee retired or left the company did not result in ERISA coverage. *Segovia*, 404 B.R. at 917. Here, all awards under the Plans are deferred, and the Plans' distributions are distributed on a schedule that ensures that for most employees, at least two years of distributions occur on account of termination of employment.

### 1. The DIF And LTIPA Plans Are Top Hat Employee Benefit Plans And Therefore Governed By ERISA.

The DIF and LTIPA Plans are top hat plans, a type of deferred compensation plan covered by ERISA's federal jurisdiction and preemption provisions. *See Modzelewski*, *supra*, at 1375-77. Top hat plans are defined as: "a plan which is unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1); *Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1486 (N.D. Cal. 1993). Both the LTIPA and DIF meet the requirements for a top hat plan

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

5.

Case No. 4:14-cv-02220-PJH

because they are (1) unfunded (which Plaintiff does not dispute), and maintained by Defendants primarily for the purpose of (2) providing deferred compensation (which Plaintiff also does not dispute) to (3) a select group of key management or highly compensated employees.[2]

Plaintiff's argument that the "select group" requirement necessitates meeting the four factors defined in *Callan v. Merrill Lynch & Co., Inc.*, 2010 WL 3452372 (S.D. Cal. Aug. 30, 2010) takes an unnecessarily restricted view of the requirement. The Northern District, for example, has defined a group of employees to be "select" when it is composed of "members that are both carefully chosen and a solid and unmistakable minority." *Duggan v. Hobbs*, 1995 U.S. Dist. LEXIS 4569, at *10-11 (N.D. Cal. Mar. 30, 1995) (*aff'd by* 99 F.3d 307 (9th Cir. 1996)). In *Demery v. Extebank Deferred Comp. Plan (b)*, the Second Circuit held that participants under a plan who were selected officers of a bank, were in management positions, and were highly compensated in comparison to bank employees at large, constituted a select group of employees. 216 F.3d 283, 287-88 (2d Cir. N.Y. 2000). The court noted that while plans offered to a very small percentage of an employer's workforce often qualify as top hat plans, "there is no existing authority that establishes when a plan is too large to be deemed 'select.'" *Id.* at 288. The court also noted that previous decisions and Department of Labor letters look at both the percentage of the workforce and the composition of the group, and there have been a wide range of groups that meet the "select group" requirement. *Id.*

Significantly, the language of both Plans expressly applies to a select group of employees. The DIF states that it "will be operated as a deferred compensation plan for selected Eligible Employees," and defines Eligible Employee as an employee "whose aggregate Compensation for that Plan Year is greater than EUR 150,000 [more than $200,000 in the United States], or such other amounts specified from time to time by the Committee." (Compl, Exh. 2, at Preamble; § 1, Definitions and Interpretation) The LTIPA similarly states that its purpose is "to provide long-term incentives and rewards to certain key staff and executives of Allianz Global Investors AG, Munich . . . and its subsidiaries and certain affiliates." (Compl, Exh. 1, at § 1.) During Plaintiff's

[2] Both Parties agree that in order for a plan to be a top hat plan, it must also be an ERISA plan. *See, e.g. Emmenegger*, 197 at n.6. For purposes of this motion, a finding of ERISA jurisdiction is sufficient to warrant dismissal of Plaintiff's complaint.

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page12 of 20

employment, only executives employed by Defendants at the vice president level or above were eligible to participate in the LTIPA. (*See also* Minn Decl., ¶ 1 ("("[E]mployees who held Vice President-level positions or above were required [to] participate in the LTIPA[.]")

The LTIPA has 321 participants spread across seven organizations employing approximately 800 employees. (Declaration of Matthias Wieland ("Wieland Decl.") at ¶ 4.) The DIF has 105 participants out of 588 U.S. employees of five Allianz entities, less than 18% of the employee population. (Declaration of John Parker ("Parker Decl.") at ¶ 4.) Accordingly, the Plans meet the "select group" requirement.

Plaintiff's argument that the Plans are not top hat plans because he was unable to negotiate the terms of the Plans is equally unavailing because the statute does not require that participants must have influence over the terms of the plan. *Alexander v. Brigham & Women's Physicians Org., Inc.*, 513 F.3d 37, 48 (1st Cir. 2008). As explained by the First Circuit, the top hat statute itself is silent as to bargaining power, and "contains no indication that Congress contemplated that courts would consider employees' ability to bargain over the terms of their deferred compensation plans, either individually or collectively, when measuring the bona fides of a select group and determining the applicability of the top-hat provision." *Id.* at 46-47. The concept that bargaining power is a factor in the top hat analysis derives from a single Department of Labor opinion letter, but as the First Circuit notes, the opinion letter speaks to Congress' rationale for enacting the top hat provision, and does not "present itself as an interpretation of the provision's requirements." *Id.* at 47.[3]

Even if a requirement of top hat plans was the ability to negotiate the terms of deferred compensation, the DOL opinion letter does not require that employees have bargaining power on an individual level. Instead, the relevant inquiry is whether the select group as a whole enjoyed bargaining power. *Id.* at 47-48. Here, Plaintiff has presented no evidence that the participants in the Plans did not have collective influence over the terms of the Plans.

Although Plaintiff's ability to negotiate the terms of the Plans on an individual basis is irrelevant to the top hat inquiry, Plaintiff has nonetheless failed to demonstrate that he was unable to

---

[3] Although the Ninth Circuit cited favorably to the DOL opinion letter in *Duggan v. Hobbs*, *supra*, 99 F.3d at 310, the issue of whether or not the plaintiff was able to negotiate the terms was not in dispute.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION 7. Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page13 of 20

individually negotiate the terms. Plaintiff emphasizes that he was "unilaterally" enrolled in the Plans, but does not allege that he attempted to negotiate the terms of the Plans and was rebuffed.

Moreover, Plaintiff's statement that he was unable to negotiate the terms of the Plans because he was not provided with the Plans is misleading (and ultimately, irrelevant). The DIF Plan documents were available for review on the DIF Plan website. (Parker Decl., ¶ 5.) A summary of the LTIPA Plan was posted on an LTIPA account management site, and the summary indicated that Participants could contact their local Human Resources Manager with any questions concerning the LTIPA Plan. (Wieland Decl., ¶ 5.) Not only that, but each time an award was issued to Plaintiff under the LTIPA Plan, the link to accept the award led to the LTIPA account management site, the ***same location*** as the summary documents. (*Id.*) Therefore, each year Plaintiff accepted an award, he was led directly to the relevant Plan documents.

The Plans quite plainly meet the legal standard to qualify as ERISA top hat plans.

### B. Plaintiff's First And Second Causes Of Action Should Be Dismissed For Failure To Exhaust Administrative Remedies.

Plaintiff's argument that administrative exhaustion is not required because Defendants developed claim procedures after Plaintiff's initiation of his suit does not relieve Plaintiff of his obligation to exhaust. This is not a scenario where the Plans were silent as to the existence of a claims procedure and the Plans were amended only after a lawsuit was filed. Here, both Plans already expressly provide for an internal review process.

The DIF provides, "The Committee will have full and exclusive discretionary power and authority to operate and administer the Plan, including without limitation exclusive discretionary power and authority: . . . (B) to determine questions of eligibility, deferral and forfeiture . . . (D) to determine entitlement to Distributions." (Compl, Exh. 2, at § 10.2.1.) Similarly, the LTIPA provides, "Prior to arbitration, all disputes, controversies or claims maintained by any Participant must first be submitted to the Plan Administrator in accordance with claim procedures determined by the Board in its sole discretion." (Compl, Exh. 1., at § 9(f).)

It was only certain details of the claims procedures that were developed after Plaintiff's suit – and only then because there had previously been no need for such details to be developed in the

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

8.

Case No. 4:14-cv-02220-PJH

United States. Accordingly, Plaintiff's reliance on *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215 (2d Cir. 2006) is misplaced. In *Eastman*, the plan at issue did not provide for any claims procedures, and after the plaintiff initiated suit, the plan administrator was forced to amend the plan to incorporate an administrative procedure. *Id.* at 218. The Court held that the claimant was not required to exhaust the administrative procedure established by the plan amendment after the lawsuit was filed. *Id.* at 223. This rationale makes sense where the claim arose in the context of a plan where no procedure was contemplated.

Unlike in *Eastman*, the internal review processes are already contained within the Plans themselves. No Plan amendments were required, rather the procedures merely needed to be more fully developed. The specifics are now in place and Defendants remain willing to process Plaintiff's claims. Plaintiff is required to exhaust the claims procedures before bringing suit in this Court.

### C. If There Is No Obligation To Comply With The Claims Procedure, Plaintiff Is Still Obligated To Arbitrate His LTIPA Claims.

Plaintiff concedes he entered into an arbitration agreement covering the instant dispute. His only proffered defense to arbitration is unconscionability.[4] However, Plaintiff fails to satisfy the heavy burden necessary to prevail on this defense.

The FAA "give[s] ***preference*** (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Comm'n, LLC*, 722 F. 3d 1151, 1160 (9th Cir. 2013) (emphasis added). Thus, the FAA displaces "[a]ny general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration[.]" *Id.* at 1159. Moreover, Plaintiff must

[4] Plaintiff consistently references and relies upon *Armendariz* in his opposition papers. This reliance is misplaced. California courts applying the unconscionability rules set forth in *Armendariz* and its progeny must do so in such a way as not to interfere with the fundamental attributes of arbitration described in *Concepcion*. While the California Supreme Court has not yet invalidated *Armendariz* in the wake of *Concepcion* (as that question was not before it), the Court's embrace of the limitations on state law unconscionability analyses imposed by *Concepcion* demonstrates a clear intent to limit *Armendariz* consistent with the direction given by the United States Supreme Court. *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1142, 1143, 1148 (2013) ("*Sonic II*"). Moreover, the *Armendariz* factors cited by Plaintiff—neutral arbitrators, more than minimal discovery, a written award, all types of remedies available to the claimant in court, and no unreasonable costs or any arbitrators' fees as a condition of access—apply to those situations involving the mandatory arbitration of "statutory civil rights in the workplace." *Armendariz v. Foundation Health Psychcare,* 24 Cal. 4th 83, 102 (2000). Such claims are not at issue here. Rather, the issue is whether Plaintiff should be compelled to arbitrate his claim for benefits under the LTIPA Plan. Nevertheless, Defendants address the *Armendariz* factors raised by Plaintiff below.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page15 of 20

demonstrate the arbitration agreement is procedurally *and* substantively unconscionable. *Sonic II*, 57 Cal. 4th 1109, 1148 (2013). Any ambiguity in this regard is resolved in favor of compelling arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

**1. The Choice Of Law Provision Is Valid; Delaware Law Supports Arbitration.**

While Defendants cite primarily California and federal authorities on the issue of unconscionability in order to respond directly to Plaintiff's Opposition, the Delaware choice-of-law provision is enforceable and will govern Plaintiff's claim for benefits under the LTIPA.

California has a "strong policy favoring enforcement" of contractual choice-of-law provisions. *See Nedlloyd Lines BV v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992). Courts enforce such provisions so long as the chosen state law is reasonable and not inconsistent with fundamental public policy. *See Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1446 (2012). Critically, choice-of-law provisions based on a single party's state of incorporation are legally "reasonable." *Lopez v. Am. Express Bank, FSB*, 2010 U.S. Dist. LEXIS 76356, *15-16 (C.D. Cal. June 2, 2010) (internal citations omitted); *Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1292 (2005) (finding Delaware choice-of-law provision reasonable in part because one contracting party incorporated in Delaware). Given that Allianz Global Investors U.S. LLC is a Delaware company, the choice-of-law is reasonable.

Delaware policy – like California – is consistent with federal law and favors the enforcement of arbitration agreements. *See Majkowski v. Am. Imaging Mgmt. Serv., LLC*, 913 A.2d 572, 582 (Del. Ch. 2006) ("Delaware arbitration law mirrors federal law, and…it is well settled federal policy, as well as the policy of this State, that arbitration is a favored method for resolving disputes") (internal citations omitted)). Given Plaintiff's failure to cite any controlling Delaware authority, he has necessarily failed to meet his burden to demonstrate unconscionability.[5]

[5] Plaintiff makes no reference to controlling Delaware law in his opposition papers. Instead, Plaintiff relies exclusively on California authorities to demonstrate unconscionability. This defect is fatal to Plaintiff's argument because it is *his* burden to demonstrate the defense. Defendants have *no burden* beyond showing the existence of a valid agreement, which Plaintiff concedes. Thus, Plaintiff's failure to cite the relevant authorities pursuant to the choice-of-law provision means he has *ipso facto* failed to meet his burden.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

10.

Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page16 of 20

**2. The Arbitration Agreement Is Not Procedurally Unconscionable Under California Law.**

**a. Plaintiff's Status As A Highly Compensated Executive Establishes The Absence Of Procedural Unconscionability.**

Plaintiff's status as, by his own admission, a well-compensated, "high-ranking executive" (Compl., ¶ 2) strongly weighs against a finding of unconscionability. *See Sonic II*, 57 Cal. 4th at 1148; *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981 (2010) (fact that plaintiff was "a highly educated attorney, who knowingly entered into a contract containing an arbitration provision in exchange for a generous compensation and benefits package[]" weighed against finding of procedural unconscionability). "When bargaining power is not grossly unequal and reasonable alternatives exist, oppression typically inherent in adhesion contracts is minimal." *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1471, n.2 (2009).

In this context, "reasonable alternatives" relates to an employee's bargaining power *and* ability to secure alternative employment. *See Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1572 (2009). Here, Plaintiff contends he was an "exceptional" performer, responsible for managing assets valued at $7.4 billion. (Compl., ¶¶ 13-14.) There can be no doubt (and Plaintiff makes no contrary assertion) that as an "exceptional" performer, Plaintiff had leverage to negotiate his participation in the LTIPA, and had numerous career alternatives available to him.

Indeed, Plaintiff glosses over the absence of evidence in this regard by claiming he was unaware of the arbitration agreement until after his termination. (Opp. 16:15-16.) That is precisely the point. Plaintiff cannot proffer evidence that his employer was unwilling to negotiate his compensation (which included participating in LTIPA) or other terms and conditions of employment (*i.e.* substituting cash compensation for participating in the LTIPA) because Plaintiff apparently made no attempt to actually do so. Plaintiff can offer no more than unsupported conjecture.

Plaintiff's contention that his opting out of the broader dispute resolution policy is evidence that he would not have agreed to arbitrate LTIPA claims argues far too much. As set forth above, the DIF and LTIPA Plans were readily available to Plaintiff. Year after year, when he accepted his award, Plaintiff was led straight to LTIPA Plan documents. By accepting these awards, Plaintiff

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

11.

Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page17 of 20

repeatedly acknowledged his consent to the terms of LTIPA Plan. That he failed to review the Plan documents and/or contact his local Human Resources Manager with any questions, or simply decided not to negotiate is insufficient to establish unconscionability. Indeed, the fact that Plaintiff opted out of the Company's dispute resolution policy only confirms that he is capable of making informed decisions about the obligation to arbitrate.[6]

Put simply, Plaintiff offers no *evidence* that he was at a disadvantage in negotiating his participation in the LTIPA Plan and its attendant obligation to arbitrate.

**b. The Alleged Failure To Provide Plaintiff With The AAA Rules Is Irrelevant To Unconscionability.**

Defendants' alleged failure to provide Plaintiff the AAA rules is irrelevant to unconscionability. (*See* Opp. 16:15-20.) "Under general California rules of contract interpretation, matters like the AAA rules can be incorporated into a contract by reference…" *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 932-33 (N.D. Cal. 2012). Moreover, post-*Concepcion* authorities have held the failure to attach the rules governing arbitration proceedings does little to suggest unconscionability. *See, e.g.*, *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) ("We find the failure to attach the AAA rules…is insufficient grounds to support a finding of procedural unconscionability.").

This is consistent with California contract law, which permits incorporation of documents into contracts (including arbitration agreements) by reference, as is the case here. *See Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 692 (2014) ("Like any other contract, an arbitration agreement may incorporate other documents by reference" including the AAA rules).

The cases Plaintiff cites suggesting the contrary – *Trivedi v. Curexo*, 189 Cal. App. 4th 387 (2010), *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004), and *Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) – are pre-*Concepcion* and oft-criticized by California courts. Most recently, in *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676 (2014), the Court of Appeal cited and disregarded *Trivedi*, *Fitz*, and *Harper* in holding the defendant-employer's "failure to attach a copy

---

[6] More fundamentally, Plaintiff cannot argue he would have refused participation in the LTIPA Plan because then he would have no lawsuit.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION 12. Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page18 of 20

of the AAA rules did not render the agreement procedurally unconscionable." *Id.* at 691. As the court noted, "[t]here could be no surprise as the [AAA] rules…were easily accessible to the parties…on the Internet." *Id.* It emphasized that the plaintiff – like Plaintiff here – was a "well-paid professional" with the evident capacity to locate the AAA rules. *Id.* at 691-92.

Here, the arbitration agreement expressly incorporates the AAA rules, which Plaintiff – a "well-paid professional" – could have easily acquired by a simple Google search. The failure to attach the rules expressly incorporated by reference into the arbitration provision does not support a finding of unconscionability.

**3. The Arbitration Agreement Is Not Substantively Unconscionable Under California Law.**

**a. The Existence Of Claims Procedures Does Not Support A Finding Of Substantive Unconscionability.**

Federal regulations provide specific procedures related to determinations of claims made under an ERISA plan and appeals of adverse determinations. 29 C.F.R. § 2560.503-1(b). Plaintiff contends that the mere existence of these procedures – specifically, the requirement that he appeal the benefit denial under the LTIPA – makes the arbitration agreement substantively unconscionable.[7] In other words, claims brought pursuant to *any* ERISA-compliant benefit plan – all of which must have claim procedures with internal appeals – are unconscionable.[8] In fact, courts have enforced mandatory arbitration clauses in ERISA plans that require beneficiaries to utilize federally mandated claims procedures before proceeding to arbitration. *See Chappel v. Laboratory Corp. of Am.*, 232 F. 3d 719, 725 (9th Cir. 2000) (enforcing arbitration clause in benefit plan in which the claims procedures required utilization of internal appeals prior to bringing a legal claim).

Plaintiff cites no authority supporting the sweeping proposition he asks this Court to endorse: that mandatory arbitration pursuant to an ERISA-compliant benefit plan (all of which must contain claim procedures) is *ipso facto* unconscionable.

---

[7] Plaintiff cannot argue on the one hand that the procedures are invalid or do not exist while also arguing that those same procedures invalidate the arbitration provision.

[8] Note that before bringing legal claims (in arbitration or otherwise), Plaintiff "must first exhaust the administrative dispute-resolution mechanism of the benefit plan's claims." *See Chappel*, 232 F. 3d at 724.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION 13. Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page19 of 20

**b. The AAA Commercial Arbitration Rules Are Fair And Do Not Support A Finding Of Unconscionability.**

"The rules of the American Arbitration Association…governing the resolution of disputes are generally regarded to be neutral and fair." *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318, n.3 (1986). Notwithstanding this fact, Plaintiff contends the AAA rules (1) improperly restrict discovery and (2) require Plaintiff to bear excessive costs. Both arguments are without merit.

Courts have found that the AAA rules allow for adequate discovery. *Holdings Ltd. v. Clarium Capital Mgmt. LLC*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007) ("The AAA rules allow for discovery, including the production of documents. That the discovery is at the discretion of the arbitrator does not mean that [plaintiff] will necessarily be denied the ability to obtain relevant books and records."); *see also Armendariz*, 24 Cal. 4th at 106 n.11 ("[A] limitation on discovery is one important component of the 'simplicity, informality, and expedition of arbitration.'").

Similarly, courts recognize that, "[t]he fee structure under the Commercial Rules of the AAA ha[ve] been held not to be unconscionable…because they provide for the waiver of fees in circumstances of need." *See Digiacomo v. Ex'Pression Ctr. For New Media, Inc.*, 2008 U.S. Dist. LEXIS 70099, *16-17 (N.D. Cal. Sept. 15, 2009); *see also* (Hick Dec., Exh. 1, R-53). Not only that, but the Rules expressly permit the arbitrator to apportion the expenses for the arbitration "as the arbitrator determines is appropriate." (Hicks Dec., Exh. 1, R-47.)

Plaintiff's arguments regarding the alleged impropriety of the AAA rules have been expressly rejected. This Court should reject them as well.[9]

**4. The Arbitration Agreement Is Mutual And Enforceable.**

Plaintiff contends that the modification provision permitting the Plan Administrator to modify the Plan (section 9(a)) of the LTIPA plan) makes the arbitration agreement unilateral and substantively unconscionable. However, "California courts have held that [] modification provisions…[that] grant an employer the unilateral right to modify the terms of the [arbitration agreement] without providing advance notice [] are not substantively unconscionable." *Slaughter v.*

[9] To the extent the Court takes issue with any applicable AAA rule, it should be severed and the parties sent to arbitration. As to Plaintiff's argument that the forum and choice of law provisions are unconscionable, the Court may easily sever these provisions as well, which are not part of the LTIPA's arbitration provision.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

14.

Case No. 4:14-cv-02220-PJH

Case4:14-cv-02220-PJH Document18 Filed06/11/14 Page20 of 20

*Stewart Enters., Inc.*, 2007 U.S. Dist. LEXIS 56732, *30-31 (N.D. Cal. Aug. 3, 2007). *See also 24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998) ("W]here the contract specifies performance the fact that one party reserves the power to vary it is not fatal if the exercise of the power is subject to prescribed or implied limitations such as the duty to exercise it in good faith and in accordance with fair dealings.)".

Plaintiff cites a single contrary ruling – *Ingle v. Circuit City Stores, Inc.*, 328 F. 3d 1165 (9th Cir. 2003) – that is out of step with the weight of authority and that the California Court of Appeal expressly rejected. *See, e.g.*, *Peng*, 219 Cal. App. 4th at 1474 n.8 ("We decline plaintiff's invitation to follow *Ingle v. Circuit City Stores, Inc.*").

The authority under the LTIPA's modification provision must be exercised in accordance with the implied covenant of good faith. Thus, its presence does not undermine the agreement's enforceability.

## III. CONCLUSION

As explained above, Plaintiff's Complaint is preempted by ERISA and, to the extent the Court construes Plaintiff's breach of contract claims as claims for benefits under ERISA, they must be dismissed for failure to exhaust administrative remedies. If the Court does not dismiss Plaintiff's breach of contract claims, Plaintiff's claim for breach of the LTIPA should be compelled to arbitration because it is subject to a valid arbitration agreement, and Plaintiff's claim for breach of the DIF should be stayed pending that arbitration.

For all of these reasons, Plaintiff's Complaint must be dismissed.

Dated: June 11, 2014

*/s/ Andrew M. Spurchise*
GARRY G. MATHIASON
ANDREW M. SPURCHISE
LITTLER MENDELSON, P.C.
Attorneys for Defendants
ALLIANZ ASSET MANAGEMENT OF AMERICA L.P., ALLIANZ ASSET MANAGEMENT OF AMERICA LLC and ALLIANZ GLOBAL INVESTORS U.S. LLC

Firmwide:127347937.11 054881.1041

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

REPLY ISO MOTION TO DISMISS / COMPEL ARBITRATION

15.

Case No. 4:14-cv-02220-PJH